CITIZENS INDUSTRIAL BANK OF AUSTIN v. OPPENHEIM et ux.

No. 8175.

Court of Civil Appeals of Texas. Austin.

March 4, 1936.

Rehearing Denied April 1, 1936.

Yelderman & Yelderman, of Austin, for appellant.

Hart, Patterson, & Hart and Benton Coopwood, all of Austin, for appellees.

McCLENDON, Chief Justice.

The bank sued Oppenheim and wife upon three promissory notes and to foreclose chattel mortgages upon jewelry severally pledged to secure the notes. In addition to other pleas, not involved in the appeal, Oppenheim set up a cross-action predicated upon a conversion of the jewelry pledged to secure the third note; consisting of a lady's diamond ring, and a lady's diamond-studded brooch pin. In a trial upon special issues, judgment was in favor of the bank upon the first two notes with foreclosure of the mortgage upon the specific property securing each note; and in favor of defendants upon their cross-action for conversion of the jewelry securing the third note. Only the latter portion of the judgment is brought in question by the appeal, which is by the bank.

Appellant has briefed four propositions which may be reduced to the following three contentions:

1. Evidence of the witnesses Mayer and Koen as to market value of the jewelry in question was improperly admitted because these witnesses testified they knew of no sales in Austin of that character of jewelry within the past three or four years.

2. Parol evidence to the effect that the jewelry pledged to secure the third note was also pledged to secure the two prior notes was improperly excluded.

3. "One is not guilty of a conversion of personal property when the refusal to deliver the same is a qualified one and which qualification is such as the circumstances reasonably warrant and is one which the person so qualifying the refusal is entitled to make under the circumstances. A qualified refusal to deliver when the qualification is one based upon a bona fide belief of right does not warrant recovery of the market value of the property but only a return of such property if the refusal to deliver was wrongful."

The witnesses Mayer and Koen had been in the jewelry business in Austin all their lives, and were thoroughly familiar with market conditions there affecting jewelry. They each placed the market value of the ring at from $900 to $1,000, and of the pin at $750. The jury found the value of the two articles to be $1,650. The objection to the testimony did not go to qualification of the witnesses, but to the competency of the testimony as evidencing market value in Austin. These witnesses were certainly well informed upon the subject, and the objection to the testimony could only be sustained upon the theory that the articles had no market value in Austin at the date of the conversion. It should be noted in this connection that the vice president of appellant testified, as a witness for appellant, to the market value of the articles in Austin at that time. He, however, placed such value much lower than did the witnesses Mayer and Koen.

The evidence was sufficient, we think, to establish market value. The fact that, due to financial conditions, there had been no sales of these particular grades of jewelry in Austin for several years, did not conclusively negative the existence of

a market value for such articles. Articles of commerce, though not of ordinary or standard design or workmanship, are not for that reason alone placed in the category of those having no market, but only an intrinsic value. Nor does the fact that economic conditions make the sale of such articles, in a particular locality, difficult or even impossible for a protracted period, destroy the market value of such articles in such locality. These witnesses kept informed upon the subject through wholesale salesmen and catalogues. Their opinion of such value was predicated upon what such articles would sell for at retail in their establishments; which sales price was based upon wholesale cost (predicated upon the value of the material, stones, etc., and workmanship), plus their usual profit. We know of no better criterion of market value for articles that are not staple or sold daily upon the open market. See Rogers & Adams v. Lancaster (Tex.Com.App.) 248 S.W. 660, and authorities there cited.

■ Upon the second contention above: The mortgage contained the following provision: "Should the undersigned pay or cause to be paid in full the indebtedness above set out (the third note), then this conveyance to become null and void and to be released at the cost of the undersigned." This was an express contractual provision that the pledged property was to be released to the grantors upon payment of the specific debt for which it was therein pledged. Any verbal agreement that it was to be pledged for other debts was in direct conflict with this provision. The proferred evidence did not simply show an additional verbal pledge of chattels to secure other obligations; but in effect nullified the quoted provision which gave the pledgors the right to a return of their property upon discharging the obligation specified in the pledge agreement. The general legal principles here involved are well established. Their proper application, we think, places the proffered evidence in the category of that variant of the contractual terms of a written instrument.

■ The conversion is predicated upon jury findings, amply supported in the evidence, to the following effect: On June 10, 1933, appellant stated to Oppenheim that the amount due on the third note was $246.25. Oppenheim thereupon procured an American Express Company check for that amount, tendered it to appellant, and demanded return of the jewelry. Appellant refused the tender, but offered to accept the check and credit the amount pro rata on Oppenheim's other indebtedness. The tender was not refused because the check was not legal tender, but because of Oppenheim's demand for a return of the jewelry. At that time the note had not been placed in an attorney's hands for collection. Appellant admitted upon the trial that it only paid Oppenheim $224 when he executed the note which was in the principal sum of $250; that it deducted $26 as follows: $15 interest, $5 insurance, $5 investigation fee, and $1 appraisal fee. "And plaintiff here and now says that it is willing and ready and consents that all of such deductions may be considered as deductions of interest and as of interest on said note." The effect of this admission was to constitute the transaction usurious, leaving only $224 due on the note, without interest, independently of any proper credits thereon.

■ These facts established a conversion by bailee.

The applicable rule is thus given in American Law Institute, Restatement of the Law of Torts, vol. 1, p. 607:

"Sec. 237. Conversion by Demand and Refusal. One in possession of a chattel as bailee or otherwise, who on demand, refuses to surrender its possession to another entitled to the immediate possession thereof, is liable as for conversion, unless

"(a) his refusal is qualified as stated in secs. 238 to 241, or

"(b) his refusal is otherwise privileged."

The facts do not bring the case within any of the exceptions stated.

Qualified refusal is justifiable (section 238) when the demand for immediate possession is unreasonable; or (section 239) where reasonable time is necessary to identify the claimant; or (section 240) where the demandant's claim is doubtful, and reasonable time is required to ascertain its validity. An example under section 238 is presented in the cited case of Malone v. Wright, 90 Tex. 49, 36 S.W. 420.

The refusal here was predicated upon a demand which appellant had no right in law to make. It was not material that it may have believed it was acting within its rights. The issue was not one of good faith, but of wrongful refusal to comply with a legal demand, in a matter in which appellant was charged as a matter of law with knowledge of Oppenheim's rights, and

 

refused the tender at its peril. For other authority on the subject, see 21 R.C. L. p. 675, § 37; 49 C.J. p. 972, § 181.

The trial court's judgment is affirmed.

Affirmed.